IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL KANOHOKULA, JR.,<br><br>Defendant. | CR. NO. 11-00976 JMS (01)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO REDUCE SENTENCE (COMPASSIONATE RELEASE), ECF NO. 218 |

## ORDER GRANTING MOTION TO REDUCE SENTENCE (COMPASSIONATE RELEASE), ECF NO. 218

### I.     INTRODUCTION

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Defendant Paul Kanohokula, Jr. ("Defendant") moves for compassionate release from Federal Correctional Institution Herlong ("FCI Herlong").  ECF No. 218.  He argues that compassionate release is warranted on the basis of (1) the length of his 168-month sentence, which he argues is grossly disproportionate relative to the sentence that now applies, given that, if sentenced today, he would not be designated a career offender and thus would not be subject to a sentence enhancement on that basis; and (2) his post-incarceration rehabilitation record.  For the reasons stated below, the court ORDERS that Defendant's sentence be reduced to time served plus seven days with supervised release to follow.

## II.    BACKGROUND

Defendant, currently 46 years old, is incarcerated at FCI Herlong with

a projected release date of September 29, 2023.  *See*

https://www.bop.gov/inmateloc/ (last visited November 18, 2021).  To date,

Defendant has served approximately 121 months in custody.  *See* Presentence

Investigation Report ("PSR"), ECF No. 132 at PageID ## 414, 421 (stating that

Defendant has been detained since his date of arrest, September 29, 2011).

On May 31, 2012, Defendant pled guilty pursuant to a plea agreement

to knowingly and intentionally conspiring to distribute and possessing with intent

to distribute 50 grams or more of methamphetamine, its salts, isomers and salts of

its isomers, a Schedule II controlled substance, in violation of 21 U.S.C.

§§ 841(a)(1), 841(b)(1)(A), and 846.  ECF Nos. 68, 69; *see also* ECF No. 10 at

PageID ## 47-48.  On January 15, 2014, based on his status as a career offender,

Defendant was sentenced to a term of 168 months imprisonment to be followed by

a term of five years of supervised release.  ECF No. 128 at PageID ## 405-06.

On June 3, 2021, Defendant submitted a request for compassionate

release to FCI Herlong's warden.  ECF No. 218 at PageID # 764.  Defendant did

not receive a response from the warden.  *See id*. at PageID # 752.  On July 9, 2021,

more than thirty days after submission of his request to the warden, Defendant,

2

proceeding pro se, filed the instant Motion.  ECF No. 218.[1]  The Government filed

its Opposition on August 13, 2021.  ECF No. 225.  And on October 27, 2021,

Defendant, through counsel, filed his Reply.  ECF No. 234.[2]

Initially, the Government took the position that, if sentenced today,

"the defendant is a career offender."  ECF No. 225 at PageID # 792.  But during a

September 28, 2021 status conference, the court expressed serious doubts as to

whether Defendant's prior convictions would qualify him as a career offender if he

was sentenced today.  ECF No. 231.  The court thus requested further briefing and,

on October 15, 2021, the Government filed supplemental briefing addressing the

career offender status, conceding that Defendant would not be designated a career

offender if sentenced today.  ECF No. 233 at PageID # 841.  On October 27, 2021,

Defendant filed a Reply to the Government's supplemental briefing, agreeing that

Defendant would not be designated a career offender if sentenced today.

The court decides the Motion without a further hearing pursuant to

Local Rule 7.1(c).

---

[1] The Motion is deemed filed on the date Defendant gave it to prison officials for mailing
to the court.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (explaining prison mailbox rule);
*Douglas v. Noelle*, 567 F.3d 1103, 1108-09 (9th Cir. 2009).  Here, the Motion is signed and
postmarked July 9, 2021, and thus the court assumes that this is the date on which Defendant
gave the Motion to prison officials for mailing.  ECF No. 218 at PageID # 763; ECF No. 218-3
(envelope).

[2] The Office of the Federal Public Defender for the District of Hawaii entered an
appearance for Defendant on September 28, 2021.  ECF No. 228.

## III.   DISCUSSION

### A.   Legal Standard

Defendant moves for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A), as amended by the First Step Act of 2018, which provides as

relevant:

> [T]he court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the
> term of imprisonment . . . after considering the factors set
> forth in [18 U.S.C.] section 3553(a) to the extent that
> they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant
> such a reduction;
> . . . .
> and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission[.]

Thus, the court may reduce Defendant's sentence if (1) Defendant has

exhausted the required administrative remedies; (2) the court determines, after

consideration of the applicable section 3553(a) factors, that Defendant has shown

that "extraordinary and compelling reasons" warrant the reduction; and (3) the

reduction is consistent with any applicable Sentencing Commission policy

statements.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the First Step Act provided defendants the ability to file motions for compassionate release on their own behalf (and, without a quorum, the Sentencing Commission has been unable to amend the Guidelines post-First Step Act). The Ninth Circuit has therefore determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). This court is thus empowered to consider any extraordinary and compelling reason that warrants a sentence reduction. In making this determination, "[t]he Sentencing Commission's statements in [§ 1B1.13] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*.

**B.     Exhaustion of Administrative Remedies**

On June 3, 2021, Defendant submitted a request to FCI Herlong's warden stating two bases for compassionate release: (1) "a lengthy sentence"; and (2) an "excellent" prison conduct record that includes continuous programming, work in the prison commissary, and achievement of his high school equivalency degree. ECF No. 218 at PageID # 764. More than thirty days after his submission of that request—and having not received a response from the warden—Defendant

filed the instant Motion.[3]  *See id.* at PageID # 752.  For purposes of this Motion,
Defendant has exhausted his administrative remedies as to these two bases.  *See*
ECF No. 225 at PageID ## 787-88.

But Defendant's Motion includes another basis for compassionate
release: the risks he faces while incarcerated at FCI Herlong during the COVID-19
pandemic, which were "exacerbated by . . . [his] obesity and asthma," medical
conditions that place him at increased risk should he contract COVID-19.  ECF
No. 218 at PageID ## 760-61.  Because his request to FCI Herlong's warden did
not include this additional basis, the Government argues that Defendant failed to
exhaust administrative remedies with respect to "any medical or physical
condition, or his susceptibility to COVID-19 while he is incarcerated."  ECF No.
225 at PageID ## 789-90.  The court agrees.

To satisfy the exhaustion requirement, a defendant's request to the
Bureau of Prisons ("BOP") must explain the basis for the relief sought.  *See* 28
C.F.R. § 571.61(a)(1) (at minimum, an inmate's compassionate release request to
BOP must contain "[t]he extraordinary or compelling circumstances that the
inmate believes warrant consideration"); *see also, e.g.*, *United States v. Burdette*,

_____

[3] In his Motion, Defendant also discusses "tragic family events" he endured while
incarcerated.  ECF No. 218 at PageID ## 759-60.  The Government interprets this argument as
an extension of the "lengthy sentence" basis for his Motion.  ECF No. 225 at PageID # 789.  The
court also so interprets.

2020 WL 6375535, at *2 (E.D. Mich. Oct. 30, 2020).  Stated differently, if the

basis for compassionate release is not presented to the BOP, the BOP has no ability

to address the request on its merits, meaning the prisoner's claim cannot be

exhausted.  *Id.*; *see also United States v. Mogavero*, 2020 WL 1853754, at *2 (D.

Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present

the same factual basis for the compassionate-release request to the warden.").

That said, the exhaustion requirement should not be applied in an

overly technical manner.  *See United States v. Knight*, 2020 WL 4059886, at *2

(M.D. N.C. July 20, 2020) ("The exhaustion requirement should not be applied

hyper-technically, and the request to the warden need not be identical in detail or

specificity to the motion made in court.").  Instead, recognizing that BOP inmates

are not trained in the law, exhaustion only requires that an inmate place the BOP

on notice of the general basis for relief.  *See, e.g.*, *United States v. Clutts*, 2020 WL

6531915, at *4 (N.D. Iowa Nov. 5, 2020) ("[I]t is sufficient for a defendant to alert

the BOP of the general grounds they assert for relief so long as the BOP has the

information necessary to investigate such grounds.").

But here, Defendant did not assert as a basis for compassionate release

the risks he faces due to the COVID-19 pandemic while confined at FCI Herlong.

*See* ECF No. 218 at PageID # 764.  In fact, Defendant's June 3, 2021 request to the

warden did not mention the COVID-19 pandemic or his conditions of confinement

at all.  *See, e.g., Mogavero*, 2020 WL 1853754, at *2 (finding, where a defendant's

request to the warden specified a cancer diagnosis but "did not mention COVID-19

concerns," defendant's motion before the court "failed to properly exhaust the

administrative process" because it was based "not merely her cancer diagnosis" but

"on cancer plus COVID-19 exposure risks"); *United States v. Douglas*, 2020 WL

5816244, at *2 (D.D.C. Sept. 30, 2020) ("[M]ost courts to consider the issue have

concluded that for a petitioner's request to the warden to exhaust administrative

remedies in accordance with § 3582(c)(1)(A), the request must be premised on the

same facts alleged in the corresponding motion filed with the court.") (internal

quotation marks and brackets omitted) (collecting cases); *Knight*, 2020 WL

4059886, at *2 (finding failure to exhaust where inmate submitted a request to

warden based on caring for his elderly wife, but filed a compassionate release

motion based on age and health conditions, because "[a]llowing an inmate to

present the Court with an entirely new basis for a sentence reduction denies the

[BOP] the opportunity to evaluate the request on its merits and undermines the

mandatory statutory exhaustion requirement").

        And as recently clarified by the Ninth Circuit, the exhaustion

requirement contained in 18 U.S.C. § 3582(c)(1)(A) is "a mandatory claim-

processing rule that must be enforced when properly invoked."  *United States v.

Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021).  Because Defendant did not exhaust his

assertion that he faces undue risk while being confined during the COVID-19 pandemic, and because the Government objects to that assertion, the court cannot—and does not—rule on the Motion as to Defendant's claim regarding this issue.

The court thus turns to Defendant's assertions that extraordinary and compelling reasons relating to both the length of his sentence and his rehabilitation justify compassionate release.

## C.      Extraordinary and Compelling Reasons Warrant Release

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release.  *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020) (citations omitted).

As specified above, Defendant asserts two bases as "extraordinary and compelling reasons" justifying compassionate release that have been exhausted: (1) the length of the sentence imposed for his criminal conduct, including "suffer[ing] through devastating losses" while incarcerated; and (2) his rehabilitation while incarcerated.  ECF No. 218 at PageID ## 755-60.  The court considers each basis in turn.

### 1.      *Lengthy Sentence*

"[C]ourts may consider individual defendants' circumstances and weigh whether a particular sentencing disparity is truly 'extraordinary and

compelling' on a case-by-case basis." *United States v. Haynes*, 2021 WL 406505, at *5 (C.D. Ill. Feb 5, 2021).  Here, Defendant argues that the length of his 168-month sentence justifies compassionate release.  *See* ECF No. 218 at PageID ## 755-56.

At the time of sentencing, Defendant's criminal history included five prior criminal convictions, PSR ¶¶ 38-43, ECF No. 132 at PageID ## 424-28, three of which, at that time, qualified as crimes of violence under the Guidelines, PSR ¶ 47, *id*. at PageID # 429.  Those three offenses—Abuse of Family/Household Member, Terroristic Threatening in the First Degree, and Burglary in the Second Degree, *see* PSR ¶¶ 39-40, 42, *id*. at PageID ## 424-25, 427—resulted in Defendant's designation as a career offender under Guideline § 4B1.1.  PSR ¶ 47, *id*. at PageID # 429.  Based on his career offender status, and given a total offense level 34, criminal history category VI, Defendant's Guidelines range at sentencing was 262 to 327 months.  PSR ¶ 75, *id*. at PageID # 434; ECF No. 133 at PageID # 444.  After granting the Government's sealed motion for downward departure, ECF No. 121, the court sentenced defendant to 168 months incarceration, *see* ECF No. 128 at PageID # 405; ECF No. 149 at PageID # 547.  He has now served approximately 121 months of that sentence.  *See* PSR, ECF No. 132 at PageID ## 414, 421 (stating that Defendant has been detained since his date of arrest, September 29, 2011).

Both Defendant and the Government agree that, if sentenced today,

Defendant would not be a career offender under the Guidelines.  *See* ECF No. 233

at PageID # 841; *see also* ECF No. 234 at PageID # 846.  The court also agrees.

Further, but for the career offender enhancement, Defendant would have qualified

for reduction of his sentence based on the United States Sentencing Commission's

November 2014 adoption of Amendment 782, which retroactively reduced the base

offense level for 413.8 grams of ice from level 34 to level 32.  *See* U.S.S.G.

§§ 1B1.10(a)(2)(B), 2D1.1; *see also United States v. Holder*, 981 F.3d 647, 651

(8th Cir. 2020) ("Amendment 782 modified the determination of a defendant's

advisory guidelines range to reflect the Fair Sentencing Act's amendment of the

minimum statutory penalties.").

Thus, without the career offender enhancement, if sentenced today,

Defendant's total offense level would be 29 (based on a base offense level 32

minus a three-level reduction for acceptance of responsibility) with criminal

history category VI,[4] resulting in a Guidelines range of 151 to 188 months.  *See*

United States Sentencing Commission, *Guidelines Manual 2021*, Ch. 5, Part A

(Sentencing Table); *cf.* PSR ¶¶ 24-36, ECF No. 132 at PageID ## 422-24.  To state

---

[4] Independent of his status as a career offender, Defendant falls under criminal history
category VI based on his criminal history.  *See* PSR ¶¶ 38-46, ECF No. 132 at PageID ## 424-
28.

the obvious, Defendant's Guidelines range at sentencing—262 to 327 months—

was significantly higher than it would be if he were sentenced today.

And, importantly, at sentencing, the court granted the Government's

sealed motion for downward departure, ECF No. 121—a factor that weighed

significantly in Defendant's below-Guidelines sentence of 168 months.  The court

made this clear at Defendant's sentencing hearing, stating, "So if we didn't have

[the sealed motion for departure] in this case, [the court] probably wouldn't even

be at the bottom of this guideline range, [it would] probably be closer to midrange,

in the 25-year range given [Defendant's] history."  ECF No. 149 at PageID ## 544-

45.

Given this history, and taking into account both the lower Guidelines

range and the sealed motion for downward departure, if Defendant was sentenced

for the first time today the court would certainly sentence him well below the low

end of his current Guidelines range (i.e., Defendant would be sentenced well below

151 months).  At sentencing, this court applied an approximately thirty-six percent

downward departure from the low end of Defendant's sentencing range, resulting

in a sentence of 168 months.  Applying the same percentage departure today (i.e.,

applying thirty-six percent downward departure to 151 months) would result in a

sentence of 97 months.  To date, Defendant has served more than 121 months.

Courts are split on the question of whether significant sentencing disparities created by intervening changes in the law can constitute extraordinary and compelling reasons for granting compassionate release—specifically, courts are split on whether shifting interpretations of "career offender" designations can constitute such extraordinary and compelling grounds for release. *Compare United States v. Nelson*, 2021 WL 4306100, at *4-6 (S.D. Ohio Sept. 22, 2021) (denying a motion for reduction in sentence despite the defendant's "correct[]" argument that he would not be designated a career offender if sentenced at the time of the motion), *and United States v. Gharib*, 2021 WL 3612086, at *9 (E.D. Tex. Aug. 13, 2021), *appeal filed* No. 21-40779 (Oct. 21, 2021), *with United States v. Trice*, 2021 WL 402462, at *3-4 (W.D. Va. Feb. 3, 2021) (granting defendant's request for compassionate release, when, taking into consideration Amendment 782 and that "[defendant] would no longer qualify as a career offender" "were his sentencing to take place today," defendant's base offense level would have been 100-125 months instead of 151-188 months if sentenced at the time of the request), *and United States v. Lawrence*, 2021 WL 859044, at *1 (E.D. Mich. Mar. 8, 2021) (finding that "extraordinary and compelling circumstances warrant[] [compassionate] release," based in part on "the fact that [defendant's] guideline range would be significantly lower today" because he would no longer be

designated a career offender), *and United States v. Vaughn*, 2021 WL 136172, at

*3 (S.D. W.Va. Jan. 13, 2021).[5]

This court adopts the view that non-retroactive changes in law

regarding "career offender' designations *can* constitute extraordinary and

compelling reasons to reduce sentences under § 3582(c)(1)(A) when considered on

an individual basis.  *Cf. United States v. Lii*, 528 F. Supp. 3d 1153, 1167 (D. Haw.

2021) (finding defendant's "grossly disproportionate sentence is enough to

independently justify compassionate release" where the mandatory minimum

sentence imposed pre-First Step Act for  defendant's possession with intent to

distribute approximately 100 grams of methamphetamine was enhanced from ten

years to life in prison on the basis of two prior convictions for minor drug crimes

and, if imposed post-First Step Act, defendant's sentence would have been an

enhanced mandatory minimum sentence of only fifteen years—the length of time

defendant had already spent in BOP custody).

---

[5] Similarly, courts are split over whether the First Step Act's reforms can constitute extraordinary and compelling reasons for the purpose of compassionate release.  *Compare, e.g.*, *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021) (holding that courts cannot "treat the First Step Act's non-retroactive amendments, whether by themselves or together with other factors, as 'extraordinary and compelling' explanations for sentencing reduction"), *petition for cert. filed* (U.S. Oct. 15, 2021 (No. 21-568)), *with United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020) (concluding that, on an individualized basis, "the severity of a [pre-First Step Act] sentence, combined with the *enormous disparity* between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)" (emphasis added) (citing cases)).

Applying that principle, the court concludes that the sentencing disparity in this case—the 151 to 188 months that would be assessed today and the 262 to 327 months that were assessed at Defendant's sentencing—is sufficient to constitute an extraordinary and compelling reason justifying compassionate release. That is, the Guidelines difference reflects a "gross disparity" in sentencing such that compassionate release is warranted in this case. *See, e.g.*, *Lii*, 528 F. Supp. 3d at 1165-67; *Trice*, 2021 WL 402462, at *3-4 (reducing defendant's term of imprisonment to time served where, based on sentencing reforms, defendant no longer would have been designated a career offender, which, together with Amendment 782, would change his base offense level from 151 to 188 months to 100 to 125 months); *Lawrence*, 2021 WL 859044, at *1 (finding that, based in part on "the fact that [defendant's] guideline range would be significantly lower today," since he would no longer be considered a career offender, "extraordinary and compelling circumstances warrant[] release."); *cf. United States v. Gomez*, 2021 WL 1240621, at *6 (D. Haw. Apr. 2, 2021) (determining that "in contrast to the chasmic gap between a 15-year sentence and a lifetime of imprisonment, the space between [a defendant's pre- and post-First Step Act sentence of] 230 months and 240 months is quite slight" and did not constitute an extraordinary and compelling reason for purposes of compassionate release).

15

#### 2.    *Rehabilitation*

Additionally, although "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason" for sentence reduction, 28 U.S.C. § 994(t), when weighing a motion for compassionate release, courts may consider a defendant's rehabilitation while incarcerated alongside other reasons.

Here, Defendant asserts that his "exceptional rehabilitative performance" while incarcerated establishes "another extraordinary and compelling reason" to grant compassionate release.  ECF No. 218 at PageID # 757. Specifically, Defendant's Individualized Needs Plan dated April 13, 2021 shows that, in addition to earning his high school equivalency degree while incarcerated, Defendant has continuously enrolled in and completed educational classes on subjects including budgeting and finance, employment preparation skills, and parenting.  *See* ECF No. 218-1 at PageID # 765.  Significantly, Defendant is currently on work assignment in the commissary, *see id*., and apparently "has been continuously employed throughout his incarceration," first in the "Plumbing Shop" and then, beginning in 2015, in the commissary, *see* ECF No. 218 at PageID # 758.

And Defendant has made other, significant strides toward rehabilitation.  Although Defendant's BOP disciplinary record is not spotless—his record indicates three disciplinary reports during his incarceration, including a 2012 incident that involved threat of bodily harm, *see* ECF No. 225-2 at PageID

16

# 834—he has made marked progress over time.   These three disciplinary

reports—incurred in 2011 and 2012—took place nearly a decade ago during

Defendant's pretrial incarceration.  *See* ECF No. 225 at PageID ## 794-95; ECF

No. 225-2 at PageID # 834.  Since that time, Defendant has maintained a clear

disciplinary record.  Additionally, Defendant completed a 12-hour drug education

course, after which he attempted to enroll in the Residential Drug Abuse Program

("RDAP"), but was deemed "unqualified."  *See* ECF No. 218 at PageID # 758; *see*

ECF No. 218-1 at PageID # 765.

Defendant's rehabilitation efforts over the course of his

incarceration—while not enough on their own—support the court's conclusion that

compassionate release is justified.

## D.     Section 3553(a) Factors

At the next step, the court must examine the applicable § 3553(a)

factors.  As relevant to this case, the § 3553(a) factors include: (1) "the nature and

circumstances of the offense and the history and characteristics of the defendant";[6]

and (2) "the need for the sentence imposed . . . (A) to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment for the

offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the

---

[6] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody. *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2).  And, under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).  18 U.S.C. § 3553(a).

It is undeniable that Defendant has a significant, troubling, and sometimes violent criminal history.  Aside from the instant conviction, Defendant's criminal history leading up to the underlying conviction in this case includes convictions for the following offenses: abuse of family/household member in 2001; terroristic threatening in the first degree, abuse of family/household member, and unauthorized control of propelled vehicle in 2002; second degree burglary and unauthorized control of propelled vehicle in 2010; and assault in the second degree in 2011.  PSR ¶¶ 39-43, ECF No. 132 at PageID ## 424-28.  Further, his 2002 charges were incurred while on probation for his 2001 conviction for abuse of family/household member.  PSR ¶ 39, *id*. at PageID ## 424-25.  During incarceration for his 2002 convictions, Defendant earned several documented misconducts, including assault, refusal to submit to drug testing, and failure to follow verbal or posted rules.  PSR ¶¶ 40, 41, *id*. at PageID ## 425-26.  And at the time of sentencing for the instant offense, Defendant had a

18

pending state probation revocation hearing due to multiple violations of his probation conditions.  PSR ¶ 42, *id*. at PageID ## 427-28 ("According to the defendant's state probation officer, a [probation] revocation hearing has been continued until after sentencing for the instant offense and in [his 2011 case for assault in the second degree].").  The court does not ignore this history.

But Defendant has made significant efforts and demonstrable progress toward rehabilitation, including completing educational classes, maintaining continued employment, and seeking drug treatment.  He has also served a substantial portion of his sentence—to date, Defendant has served more than 121 months incarceration.  *See* PSR, ECF No. 132 at PageID ## 414, 421.

The United States Probation Office for the District of Hawaii has also put forth an appropriate release plan—to reside in transitional housing, which offers structure and oversight to mitigate the Defendant's potential risk to the community and thereby increasing Defendant's chances of a successful transition post-incarceration.  ECF No. 236.  And for all the reasons discussed above, the time served to date—more than 10 years—is sufficient to achieve the goals of sentencing under § 3553(a)(2).

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Sentence

Reduction Under First Step Act (Compassionate Release), ECF No. 218, is

GRANTED.  It is further ordered that:

1.     Defendant's sentence of incarceration is reduced to time served

plus seven days; and

2.     Upon release from custody, Defendant shall commence serving

his five-year term of supervised release as previously imposed; and shall abide by

all mandatory, standard, and special conditions as approved and ordered by the

court on November 18, 2021, ECF No. 239.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 18, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Kanohokula*, Cr. No. 11-00976 JMS (01), Order Granting Defendant's Motion to Reduce Sentence (Compassionate Release), ECF No. 218